# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| EMCO WHEATON USA INC; EMCO WHEATON GMBH; FRUVAC LTD.; AIR SYSTEMS AND PUMP SOLUTIONS, LLC; MILTON ROY LLC; AIR DIMENSIONS INC.; PENN VALLEY PUMP CO., LLC; EXCELSIOR BLOWER SYSTEMS, LLC; SEEPEX INC.; AIR POWER SYSTEMS CO., LLC; FLEXAN, LLC; FMI, LLC; SSI AERATION, INC.; CULLUM & BROWN OF KANSAS CITY, INC.; GARDNER DENVER THOMAS, INC.; ILC DOVER, L.P.; GARDNER DENVER NASH LLC; KSE SCIENTIFIC, LLC; LAWRENCE FACTOR, INC.; DOSATRON INTERNATIONAL, LLC; INDUSTRIAL TECHNOLOGIES & SERVICES AMERICAS INC.; CONTROLLED FLUIDICS, LLC; AIR SYSTEMS LLC; TRACE ANALYTICS LLC; INDUSTRIAL TECHNOLOGIES AND SERVICES, LLC; MAXIMUM AG TECHNOLOGIES, INC.; INGERSOLL-RAND INDUSTRIAL U.S., INC.; HIBON INC.; G & D CHILLERS, LLC; TRI-CONTINENT SCIENTIFIC, INC.; HASKEL INTERNATIONAL, LLC; ADICOMP SERVICE USA, LLC; ADICOMP USA INC.; and PARAGON TANK TRUCK EQUIPMENT, LLC<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants. | Court No. 1:26-cv-4985 |

## COMPLAINT

Plaintiffs, Emco Wheaton USA Inc; Emco Wheaton GmbH; Fruvac Ltd.; Air Systems and Pump Solutions, LLC; Milton Roy LLC; Air Dimensions Inc.; Penn Valley Pump Co., LLC; Excelsior Blower Systems, LLC; Seepex Inc.; Air Power Systems Co., LLC; Flexan, LLC; FMI, LLC; SSI

Aeration, Inc.; Cullum & Brown of Kansas City, Inc.; Gardner Denver Thomas, Inc.; ILC Dover, L.P.; Gardner Denver Nash LLC; KSE Scientific, LLC; Lawrence Factor, Inc.; Dosatron International, LLC; Industrial Technologies & Services Americas Inc.; Controlled Fluidics, LLC; Air Systems LLC; Trace Analytics LLC; Industrial Technologies and Services, LLC; Maximum AG Technologies, Inc.; Ingersoll-Rand Industrial U.S., Inc.; Hibon Inc.; G & D Chillers, LLC; Tri-Continent Scientific, Inc.; Haskel International, LLC; Adicomp Service USA, LLC; Adicomp USA Inc.; and Paragon Tank Truck Equipment, LLC (collectively, "Plaintiffs"), by and through their counsel, bring this Complaint against Defendants, the United States of America, U.S. Customs and Border Protection ("CBP"), and Rodney S. Scott, in his official capacity as Commissioner of CBP (collectively, "Defendants"), and alleges as follows:

1. Plaintiffs are importers of record for merchandise subject to tariffs imposed pursuant to a series of executive orders issued under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq.

2. Beginning in February 2025, the President issued multiple executive orders invoking IEEPA as authority to impose sweeping tariffs on goods imported from nearly all foreign countries, including from which Plaintiffs import merchandise (collectively, the "IEEPA Tariffs"). Plaintiffs are required to pay these tariffs at the time of importation.

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

4. The Supreme Court also confirmed that challenges to the IEEPA Tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Id.* at 5. Therefore, this Court has

jurisdiction and authority to order remedial relief and refunds of IEEPA Tariffs paid by importers.

5. Accordingly, for the reasons set out in *Learning Resources*, Plaintiffs seek for themselves full refunds from Defendants of all IEEPA Tariffs Plaintiffs have paid to the United States.

**PARTIES**

6. Plaintiff, Emco Wheaton USA Inc, is a U.S. corporation incorporated under the laws of Texas.

7. Plaintiff, Emco Wheaton GmbH, is a non-resident importer organized under the laws of Germany.

8. Plaintiff, Fruvac Ltd., is a non-resident importer organized under the laws of Canada.

9. Plaintiff, Air Systems and Pump Solutions, LLC, is a U.S. limited liability company organized under the laws of Oklahoma.

10. Plaintiff, Milton Roy LLC, is a U.S. limited liability company organized under the laws of Delaware.

11. Plaintiff, Air Dimensions Inc., is a U.S. corporation incorporated under the laws of Florida.

12. Plaintiff, Penn Valley Pump Co., LLC, is a U.S. limited liability company organized under the laws of Delaware.

13. Plaintiff, Excelsior Blower Systems, LLC, is a U.S. limited liability company organized under the laws of Pennsylvania.

14. Plaintiff, Seepex Inc., is a U.S. corporation incorporated under the laws of Ohio.

15. Plaintiff, Air Power Systems Co., LLC, is a U.S. limited liability company organized under the laws of Oklahoma.

16. Plaintiff, Flexan, LLC, is a U.S. limited liability company organized under the laws of Delaware.

17. Plaintiff, FMI, LLC, is a U.S. limited liability company organized under the laws of Delaware.

18. Plaintiff, SSI Aeration, Inc., is a U.S. corporation incorporated under the laws of New York.

19. Plaintiff, Cullum & Brown of Kansas City, Inc., is a U.S. corporation incorporated under the laws of Missouri.

20. Plaintiff, Gardner Denver Thomas, Inc., is a U.S. corporation incorporated under the laws of Delaware.

21. Plaintiff, ILC Dover, L.P., is a U.S. limited partnership formed under the laws of Delaware.

22. Plaintiff, Gardner Denver Nash LLC, is a U.S. limited liability company organized under the laws of Delaware.

23. Plaintiff, KSE Scientific, LLC, is a U.S. limited liability company organized under the laws of Delaware.

24. Plaintiff, Lawrence Factor, Inc., is a U.S. corporation incorporated under the laws of Florida.

25. Plaintiff, Dosatron International, LLC, is a U.S. limited liability company organized under the laws of Florida.

26. Plaintiff, Industrial Technologies & Services Americas Inc., is a U.S. corporation incorporated under the laws of Delaware.

27. Plaintiff, Controlled Fluidics, LLC, is a U.S. limited liability company organized under the laws of New Hampshire.

28. Plaintiff, Air Systems LLC, is a U.S. limited liability company organized under the laws of Kentucky.

29. Plaintiff, Trace Analytics LLC, is a U.S. limited liability company organized under the laws of Texas.

30. Plaintiff, Industrial Technologies and Services, LLC, is a U.S. limited liability company organized under the laws of Delaware.

31. Plaintiff, Maximum AG Technologies, Inc., is a U.S. corporation incorporated under the laws of Michigan.

32. Plaintiff, Ingersoll-Rand Industrial U.S., Inc., is a U.S. corporation incorporated under the laws of Delaware.

33. Plaintiff, Hibon Inc., is a non-resident importer incorporated under the laws of Canada.

34. Plaintiff, G & D Chillers, LLC, is a U.S. limited liability company organized under the laws of Oregon.

35. Plaintiff, Tri-Continent Scientific, Inc., is a U.S. corporation incorporated under the laws of California.

36. Plaintiff, Haskel International, LLC, is a U.S. limited liability company organized under the laws of California.

37. Plaintiff, Adicomp Service USA, LLC, is a U.S. limited liability company organized under the laws of California.

38. Plaintiff, Adicomp USA Inc., is a U.S. corporation incorporated under the laws of Illinois.

39. Plaintiff, Paragon Tank Truck Equipment, LLC, is a U.S. limited liability company organized under the laws of Wisconsin.

40. Plaintiffs are referred to collectively in this Complaint as "Plaintiffs."

41. Defendant, United States of America, received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

42. Defendant, CBP, is the United States agency of the U.S. Department of Homeland Security that is responsible for collecting tariffs or duties, taxes, and fees on goods imported into the United States.

43. Defendant, Rodney S. Scott, is the Commissioner of CBP and is sued in his official capacity.

44. Defendants are referred to collectively in this Complaint as “Defendants.”

## JURISDICTION

45. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources*, slip op. at 5, n.1.

46. This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1).

47. Plaintiffs have standing to bring this lawsuit because they are the importers of goods imported into the United States from countries subject to the IEEPA Tariffs as implemented and collected by CBP that have been held by the Supreme Court to be unlawful. As a result of the executive orders identified in this lawsuit, Plaintiffs have paid IEEPA Tariffs to the United States and thus have suffered injury caused by those orders. The relief Plaintiffs seek from this Court would redress those injuries.

## GENERAL PLEADINGS

### I. The IEEPA Tariff Orders

48. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order relied on IEEPA authorizing the tariffs. Collectively, these are referred to in this Complaint as the “Trafficking Tariff Orders.” The President claimed the tariffs were justified under IEEPA because of a purported national emergency.

49. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9117,

*Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Trafficking Tariff Order"), imposed an additional 25 percent tariff on the import of goods from Mexico. *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025). The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

50. The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Trafficking Tariff Order"), declared an emergency because of opioid trafficking, and also imposed a 25% tariff, with certain exceptions. *See* Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025).

51. The executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Trafficking Tariff Order"), also declared an emergency because of opioid trafficking, declaring that "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." *See* Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025). The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large,

and drugs." *Id.*

52. Beginning February 4, 2025, the China Trafficking Tariff Order imposed an additional 10% ad valorem duty on imports from China into the United States, in addition to existing duties.

53. On February 5, 2025, the President issued Executive Order 14200. *See* Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).

54. On March 3, 2025, the President amended the China Trafficking Tariff Order again through Executive Order 14228. *See* Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Mar. 7, 2025). The March 3 Amendment raised the IEEPA Tariffs on imports from China to 20%, effective March 4, 2025, citing China's failure to take sufficient measures to address the illicit drug crisis as justification for the hike.

55. On April 2, 2025, President Trump declared trade deficits with U.S. trading partners as its own national emergency and issued Executive Order 14257, known as the "Reciprocal Tariff Order." *See* Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional country-specific reciprocal tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

56. On April 8, 2025, in response to China's retaliatory tariffs, the President ordered a steep increase in the reciprocal tariff on Chinese goods, raising the rate from 34% to 84%, effective

April 9, 2025. *See* Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).

57. On April 9, 2025, the President announced a 90-day suspension of elevated country-specific tariffs for all nations except China, effective April 10, 2025. *See* Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment,* 90 Fed. Reg. 15625 (Apr. 15, 2025). At the same time, the country-specific tariff rate on Chinese imports was raised from 84% to 125%, effective April 10, 2025. *Id.* Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.[1]

58. In implementing the IEEPA Tariffs, the Defendant instructed modifications to the Harmonized Tariff Schedule of the United States ("HTSUS"), mandating that goods subject to the disputed tariffs be classified under new tariff codes.

59. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt No. 2). This Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. It was the Federal Circuit's decision that was, in turn, affirmed by the Supreme Court on February 20, 2026.

60. Since the *V.O.S. Selections* complaint was filed, the President has invoked IEEPA to issue additional executive orders imposing additional tariffs and modifying others.

[1] The country-specific tariff on Chinese imports is temporarily set at 10%, effective May 14, 2025. *See* Exec. Order No. 14298, *Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21831 (May 21, 2025); Exec. Order No. 14334, *Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*, 90 Fed. Reg. 39305 (Aug. 14, 2025); Exec. Order No. 14358, *Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50,729 (Nov. 7, 2025).

61. CBP continued to collect duties imposed by the IEEPA executive orders ("Challenged Tariff Orders") while the *V.O.S. Selections* litigation and related litigation remained pending, and only announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).

62. By this Complaint, Plaintiffs seek relief as a result of all duties they have paid to the United States arising from the Challenged Tariff Orders.

## II. CBP's Implementation of the IEEPA Tariff Orders

63. CBP is charged with the assessment and collection of duties. 19 U.S.C. §§ 1500, 1502.

64. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, including those that were imposed under IEEPA, on the imported goods based upon the tariff classification of goods, according to the rates established by the HTSUS. *See* 19 U.S.C. §§ 1202, 1500, 1502.

65. The importer of record typically pays an estimated duty at the time of entry, based on its customs declaration, which specifies the value, country of origin, and HTSUS classification of the merchandise. *See* 19 U.S.C. § 1484. CBP may review the customs declaration and inspect the imported goods. The final duty computation is then based on the verified value, classification, country of origin, applicable duty rate, and other information. *See* 19 U.S.C. § 1500.

66. Once CBP determines the final duty amount, it "liquidates" the entry and notifies the importer of record as to whether the importer owes more money or is entitled to a refund. 19 U.S.C.

§ 1500.

67. Unless an extension is granted, liquidation must occur within one year. *See* 19 U.S.C. § 1504(a). CBP typically aims to liquidate entries 314 days after the goods' entry date and posts a notice on its website. However, CBP may liquidate entries earlier or extend the liquidation period.

68. This Court possesses the equitable authority to suspend liquidation. *E.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

69. After liquidation occurs, and if the liquidation is subject to protest, the importer of record has 180 days to file a protest requesting CBP to reliquidate the duties. *See* 19 U.S.C. § 1514(a).[2] However, not all liquidations can be protested. For example, if CBP acts purely in a ministerial capacity in imposing a duty, the liquidation of that entry is not subject to protest. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

70. Both this Court and the Federal Circuit have warned that an importer may be barred from recovering duty refunds on entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

71. On March 2, 2026, the Federal Circuit returned the *V.O.S.* mandate to this Court, and on March 4, 2026, this Court, in the related case of *Atmus Filtration, Inc. v. United States*, issued an order directing liquidation or reliquidation of entries that were subject to IEEPA Tariffs. *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 21; *see also V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 73.

72. On March 6, 2026, at a conference in the *Atmus Filtration* case, the Government

[2] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

acknowledged that it would, at least in part, comply with this Court's order by constructing a voluntary system for liquidation or reliquidation of certain entries without regard to IEEPA Tariffs and thereafter constructed the voluntary Consolidated Administration and Processing of Entries ("CAPE") system that commenced receiving declarations from importers on April 20, 2026.

73. On June 2, 2026, the Government filed a Notice of Appeal to the Federal Circuit challenging this Court's authority to order CBP to issue refunds of IEEPA Tariffs on entries for which liquidation has become final (*i.e.*, entries that have been liquidated for more than 80 days). *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 91. The appeal was docketed on June 3, 2026, *V.O.S. Selections, Inc. v. Trump*, No. 26-1895 (Fed. Cir. June 3, 2026). The Government has maintained the position that an order from this Court directing the reliquidation of entries for which liquidation has become final would be necessary to provide the Government with the authority to reliquidate such entries. *See V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 98.

74. By this Complaint, Plaintiffs seek relief as a result of all IEEPA Tariffs they have paid on both unliquidated and liquidated entries, including IEEPA Tariffs paid on entries for which liquidation has become final.

**III. The Supreme Court Held That IEEPA Does Not Authorize Assessment of Duties**

75. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

76. None of these statutes authorize the President authority to impose tariffs. Of these, Defendants have relied solely on the IEEPA statute to impose and collect the IEEPA Tariffs at issue.

77. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections*, holding that IEEPA did not authorize assessment of IEEPA Tariffs.

This Court permanently enjoined the government from enforcing the IEEPA Tariffs at issue in that case.

78. On appeal, the Federal Circuit stayed this Court's decision.

79. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Tariffs are unlawful.

80. In a separate lawsuit brought by another group of importers, the U.S. District Court for the District of Columbia concluded that IEEPA provides no authority to impose tariffs. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). The case was appealed to the D.C. Circuit, but before that court heard arguments, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*, consolidated them, and held oral argument on November 5, 2025.

81. On February 20, 2026, the Supreme Court concluded that IEEPA provides no authority to impose tariffs. *See Learning Res., Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026).[3]

[3] While the *V.O.S. Selections* litigation was pending before the Supreme Court, numerous importers proactively filed lawsuits at the U.S. Court of International Trade seeking refunds of IEEPA Tariffs and requesting preliminary injunctive relief to suspend the liquidation of their entries. *See, e.g.*, *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, Consol. Court No. 25-00255, slip op. at 4 & n.1 (Ct. Int'l Trade Dec. 15, 2025). In opposing those motions, the Government argued in numerous court filings that injunctive relief was unnecessary because the Government "will not oppose the [c]ourt's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties" and that "[s]uch reliquidation would result in a refund of all duties determined to be unlawfully assessed, with interest." *Id.* at 6. The Government also expressly and repeatedly represented that, "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government ***will issue refunds*** to plaintiffs, including any post-judgment interest that accrues." Defs.-Appellants' Mot. for an Emergency Stay Pending Appeal & an Immediate Admin. Stay at 25, *V.O.S. Selections, Inc. v. Trump*, Appeal No. 25-1812 (Fed. Cir. filed May 28, 2025), May 29, 2025, ECF No. 6 (emphasis added). The Government went as far to represent that "plaintiffs will assuredly receive payment on their refund with interest" and there was "virtually no risk to any importer that they 'would not be made whole' should they prevail on appeal." Defs.' Mot. for a Stay of Prelim. Inj. Pending Appeal at 13, *Learning Resources, Inc. v. Trump*, No. 25-cv-01248 (D.D.C. filed Apr. 22, 2025), June 2, 2025, ECF No. 41. *See also, e.g.*, Def.'s Resp. in Opp'n to Mot. for Prelim. Inj. & Summ. J. at 42, *V.O.S. Selections*, No. 25-066, ECF No. 32 (Apr. 29, 2025); Defs.' Mot. to Stay Proceedings at 7, *Axle of Dearborn, Inc. v. Dep't of Com.*, No. 25-091 (Ct. Int'l Trade May 30, 2025), ECF No. 13. Relying on these representations, the CIT denied the motions for a preliminary injunction, concluding that the Government had taken an "unequivocal position" that "liquidation will not affect the availability of refunds after a final decision" in *V.O.S Selections*. *AGS Co.*, slip op. at 8. As it relates to the Government's express agreement to "issue refunds" to plaintiffs, the court further held that the Government would be judicially estopped from "assum[ing] a contrary position" in the

## IV. Plaintiffs Paid IEEPA Tariffs

82. Plaintiffs' imports subject to IEEPA Tariffs entered the United States under newly designated HTSUS codes.

83. As of the date of this Complaint, Plaintiffs have paid IEEPA Tariffs imposed by the Challenged Tariff Orders.

## STATEMENT OF CLAIMS

## COUNT I

## THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

84. Plaintiffs incorporate paragraphs 1-86 above by reference.

85. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this Court's ruling and the Federal Circuit's affirmance of this Court's opinion in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

86. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate. . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA Tariffs. *Id.* at 21.

87. The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

---

future. *Id.* at 5.

88. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

89. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA Tariffs paid by Plaintiffs, with interest as provided by law.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a) order CBP to reliquidate any entries that have been liquidated with IEEPA Tariffs, including any entries that have been liquidated for more than 80 days;

b) order CBP to liquidate all unliquidated entries subject to IEEPA Tariffs without IEEPA Tariffs;

c) order the United States to refund to Plaintiffs all IEEPA Tariffs collected on those entries, together with interest as provided by law through the CAPE system, without requiring Plaintiffs to file Post-Summary Corrections or Protests for any entries subject to the Challenged Tariff Orders to the extent possible;

d) award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

e) grant any further relief this Court deems just and proper.

Respectfully submitted,

Dated: November 3, 2026

/s/ Ashley Akers
Ashley Akers
Andrew McAllister
Xin Jin
Jina Shin
Noah Curtin
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
Tel. (202) 441-5870
Ashley.Akers@hklaw.com

*Counsel for Plaintiffs*